**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:18-CV-20757**


MSP RECOVERY CLAIMS,
SERIES LLC, and SERIES 16-11-509,

       Plaintiffs,

v.

BOEHRINGER INGELHEIM,
PHARMACEUTICALS, INC., PROVIDIO
LIEN COUNSEL, LLC, and PROVIDIO
MEDISOLUTIONS, LLC,

       Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, MSP Recovery Claims, Series LLC, and Series 16-11-509, on behalf of themselves and a class of similarly-situated Medicare Advantage Organizations and their assignees, bring this action against Defendants, Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"), Providio Lien Counsel, LLC, and Providio Medisolutions, LLC (collectively "Defendants").

## NATURE OF THE ACTION

Plaintiffs, as assignees of Medicare Advantage Organizations ("MAOs"), first-tier entities, downstream entities, and other similarly-situated entities (collectively referred to as "MAOs" or "Class Members"), sue Defendants to enforce recovery, subrogation, and reimbursement rights for medical expense payments made by Plaintiffs' assignors and Class Members as secondary payers.

As secondary payers,[1] Plaintiffs seek to recover from Defendants, as primary plans,[2] or entities that received payment from a primary plan, reimbursement of all sums that Plaintiffs' assignors and Class Members were billed for medical care and treatment rendered on behalf of MA enrollees, for which Defendants are responsible as primary payers (or as entities that received payment from a primary payer), on a fee-for-service basis; and double damages for Defendants' failure to properly reimburse Plaintiffs' assignors and Class Members.

Plaintiffs seek reimbursement for its assignors' conditional payments of the medical expenses for injuries their enrollees suffered as a direct result of taking Pradaxa (the "medical expenses"), a blood thinner manufactured, marketed, or distributed by Boehringer. Plaintiffs' claims arise from Defendants' failure and refusal to reimburse Plaintiffs for the medical expenses for which Defendants are the responsible entities. The claims here vested when Defendants settled the federal Multi-District Litigation ("MDL") styled *In re: Pradaxa (Dabigatran Etexilate) Prod. Liability Litig.*, MDL No. 2385 (S.D. Ill.) (the "MDL Proceedings").

---

[1] A "conditional" or "secondary" payment is a payment by an MAO for services where another payer (such as a tortfeasor or no-fault insurer) is responsible. The payment is "conditioned" on repayment to the MAO.

[2] Primary plans, in the context of Medicare as a secondary payer, include workers' compensation plans, group health plans, liability insurance policies or plans (including self-insured plans *or tortfeasors such as Defendants*), and no-fault insurance. 42 U.S.C. § 1395y(b)(2)(A)(ii).

Plaintiffs' MAO assignor contracted with the Centers for Medicare and Medicaid Services ("CMS") to administer Medicare benefits for Medicare beneficiaries that elected to receive benefits from MA Plans under Medicare Part C. Plaintiffs' recovery rights arise from conditional payments the MAO-assignor made, as secondary payers, for which Defendants are primarily responsible as a result of their settlement of the MDL Proceedings.

## JURISDICTION, PARTIES AND VENUE

1.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1367 (supplemental jurisdiction).

2.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1332, because diversity of jurisdiction exists between Plaintiffs and Defendants. The amount in dispute exceeds $75,000, exclusive of interest and costs.

3.      Plaintiff MSP Recovery Claims, Series LLC, is a Delaware series limited liability company, with its principal place of business located at 5000 SW 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery Claims, Series LLC, is a citizen of Delaware and is not a citizen of any of the Defendant's home state.

4.      Plaintiff, Series 16-11-509, is a sub-series of MSPRC with its principal place of business at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

5.      At all material times, the Class Members (or their assignors) contracted with CMS to administer Medicare benefits for Medicare beneficiaries who elect to enroll in MA Plans under Medicare Part C.

6.      Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"), is a foreign corporation organized under the laws of the State of Delaware with its principal place of

3

business in 900 Ridgebury Road, Ridgefield, Connecticut. Boehringer is authorized to conduct business in Florida and maintains agents to transact its customary business in Florida.

7.      Defendant Providio Medisolutions, LLC, is a foreign corporation with its principal place of business located at 5613 DTC Parkway, Suite 700, Greenwood Village, CO 80111, and its Primary Lien Handling Office in 711 York Road, 2nd Floor, Willow Grove, Pennsylvania. Providio Medisolutions, LLC, transacts and conducts business in Florida and derives substantial revenue from its business and contacts with Florida.

8.      Providio Lien Counsel, LLC, is a division of Providio Medisolutions, LLC, and is a foreign corporation with its principal place of business located at 5613 DTC Parkway, Suite 700, Greenwood Village, CO 80111, and its Primary Lien Handling Office in 711 York Road, 2nd Floor, Willow Grove, Pennsylvania. Providio Lien Counsel, LLC, transacts and conducts business in Florida and derives substantial revenue from its business and contacts with Florida. The Providio entities will be collectively referred to as "Providio." Providio was appointed to resolve the Medicare reimbursement claims that are the subject of this lawsuit.

9.      This Court has personal jurisdiction over Providio under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(1), which subjects Providio to specific jurisdiction for claims "arising from" Providio's "operating, conducting, engaging in, or carrying on a business or business venture in" Florida. Specifically, Providio operates and engages in lien resolution in Florida and, in this case, agreed to control the Pradaxa settlement fund and resolve the MAOs' claims, some of which were Florida-based MAOs. Accordingly, this lawsuit arises from Providio's "operating, conducting, engaging in, or carrying on a business or business venture in" Florida. Moreover, Providio knew, or had reason to know, that its refusal or failure to reimburse

conditional payments made by Florida-based MAOs would give rise to claims by Florida-based MAOs, such that the exercise of jurisdiction over Providio comports with due process.

10.     Venue is proper under 28 U.S.C. § 1391 in the Southern District of Florida because it is the district in which the cause of action accrued.

11.     All conditions precedent to this action have occurred, been performed, or have been waived or excused.

## BACKGROUND

**A.     The Medicare Act**

12.     The federal Medicare program began with the 1965 enactment of Title XVIII of the Social Security Act (42 U.S.C. §§ 1395, *et seq.* (the "Medicare Act")) and is a system of federally-funded health insurance plans that pays medical treatment costs for individuals over 65 years of age, certain disabled persons, and persons with End Stage Renal Disease. *See* 42 C.F.R. § 408.10, *et seq.* (2006). Medicare is a complex federal program that insured over 53 million Americans in 2014 with total expenditures of $613.3 billion.[3]

13.     Today, Medicare benefits are divided into four parts:

(1) Medicare Part A, 42 U.S.C. § 1395c, *et seq.*, provides coverage for costs of inpatient hospital services and is available without payment of premiums to most persons who paid Medicare payroll taxes prior to becoming Medicare-eligible;

(2) Medicare Part B, 42 U.S.C. § 1395j, *et seq.*, funded through premiums and general tax revenue, is a voluntary program in which the beneficiary pays premiums to Medicare, and in return Medicare pays the costs of his or her medically-necessary outpatient services, such as doctors' office visits;

(3) Medicare Part C, 42 U.S.C. § 1395w-21(a)(1), permits individuals eligible for Medicare to elect to receive their Medicare benefits through enrollment in an MAO;

---

[3] *See* 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, p. 7.

(4) Medicare Part D, 42 U.S.C. § 1395w-101 *et seq.*, provides voluntary prescription drug coverage to Medicare enrollees; and

(5) Medicare Part E, 42 U.S.C. §§ 1395x – 1395y, contains definitions and general provisions applicable to the entire Medicare program. The Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), is codified in Part E.

**B.     Medicare Advantage ("MA")**

14.     The Balanced Budget Act of 1997, Pub. L. 105-33, established the

"Medicare+Choice" program, later renamed "Medicare Advantage," by adopting a new "Part C"

to Medicare,[4] which gave Medicare enrollees the option to receive their Medicare benefits from

private health plans.[5] Congress passed Medicare Part C to "enable the Medicare program to

utilize innovations that helped the private market contain costs and expand health care delivery

options." HOUSE CONF. REP NO. 105-217, at 585 (1997), reprinted in 1997 U.S.C.C.A.N.

205-06.

15.     Under the MA program, CMS pays MAOs a fixed monthly amount (a

"capitation" fee) for each enrollee, and delegates to the MAOs the obligation to administer, pay,

and assume all economic risk for the Medicare benefits provided to Part C enrollees in

accordance with the requirements of Title XVIII and CMS Medicare regulations. *See* 42 U.S.C.

§ 1395w-23(a)(1)(A); 42 C.F.R. § 422.268.

16.     To qualify to become an MA plan, an MAO must meet strict qualifying standards

and contract with CMS to provide Medicare benefits to those Medicare beneficiaries who elect to

enroll. MA plans must provide all Medicare benefits offered under Parts A and B. They

---

[4] The governing provisions of Medicare Part C were incorporated into the Medicare Act at 42 U.S.C. §§ 1395w-21-1395w-28.

[5] Private health plans have been a part of Medicare since 1972, Pub. L. 92-603, Medicare Act at 42 U.S.C. § 1395mm.

generally also provide additional or "supplemental" benefits, which may include prescription drug coverage under Medicare Part D. *See* 42 U.S.C. §§ 1395w-21, 1395w-29.

17.     When primary plans or other liable parties reimburse MA plans, those recoveries help reduce Medicare expenditures by the Medicare Trust Funds. Thus, MSP recoveries promote the essential purpose of Medicare Part C—shifting expenses from the Medicare program to the private sector.

18.     Currently, there are over 17 million people (about 31% of all Medicare patients) enrolled in more than 2,800 MA plans offered nationally by more than 400 MAOs.

**C.     The Medicare Secondary Payer Act**

19.     Before 1980, Medicare generally paid for its enrollees' medical services, regardless of whether another insurer or tortfeasor was legally responsible to do so.

20.     In 1980, in response to skyrocketing costs, Congress enacted the first in a series of amendments that shifted Medicare costs to other payers. Those amendments, along with their respective enforcement provisions, now collectively comprise the Medicare Secondary Payer Act ("MSP Act"). *See* 42 U.S.C. § 1395y(b). In summary, the MSP Act makes it clear that Medicare and MAOs are the payers of last resort. The MSP Act:

> [m]akes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer . . . In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay. . . . The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her.

*Cochran v. U.S. Health Care Fin. Admin.,* 291 F.3d 775, 777 (11th Cir. 2002). The primary intent underlying the MSP Act is to shift the financial burden of health care from the Medicare program to private insurers and thereby lower the cost of the Medicare program.

21.     Under the Act, payment for treatment of a Medicare beneficiary, whether covered under Part A, B, C, or D, is "conditional" or "secondary," whenever there is a primary plan. A primary plan must either pay first for that treatment or else later reimburse the Medicare secondary payer for its conditional payment. 42 U.S.C. § 1395y(b)(2). A tortfeasor "carries its own risk" for liability, and is a "primary plan" under the MSP Act, 42 U.S.C. § 1395y(b)(2)(A), while an MAO is a "secondary payer." 42 U.S.C. § 1395w-22(a)(4).

22.     A primary plan's reimbursement responsibility under the Act is "demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii). Thus, a tort settlement in favor of a Medicare enrollee or any settlement payment to a claimant who is a Medicare enrollee triggers the tortfeasor's (or its liability insurer's) reimbursement obligation. *Taransky v. Sec'y of the United States HHS*, 760 F.3d 307, 315 (3d Cir. 2014) ("the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare.").

23.     The MSP Act creates a federal coordination of benefits scheme by defining "primary plans" to include tortfeasors.[6]

24.     Payments by an MAO are made conditionally, regardless of whether primary

---

[6] § 1395y(b)(2)(A)(ii). In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no–fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

liability was established at the time of conditional payment, when an MAO makes a payment for medical services that are the responsibility of a primary plan under the MSP Act and related federal statutes, regulations and guidelines, including 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(2), 1395y(b)(3)(A), 42 C.F.R. §§ 422.108(f), 489.20(f)-(h), and 411.24(h) (the "MSP Law").

25.     CMS interprets the MSP Law to apply to MAOs. "The MA organization will exercise the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). A medical provider or a similarly-situated entity that receives payment from a primary plan is, therefore, required to reimburse an MAO for conditional Medicare payments.

26.     CMS further explains that the regulations give MAOs "the right, under existing Federal law, to collect for services for which Medicare is not the primary payer" using "the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations." *See* CMS, Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

27.     The MSP Act requires that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse" any conditional Medicare payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

28.     The MSP Act's enforcement provision authorizes a private cause of action to recover primary payments or reimbursements owed under the MSP Act. 42 U.S.C. § 1395y(b)(3)(A). The provision further provides that damages "shall be in an amount double the amount otherwise provided."[7]

29.     The courts recognize that this private cause of action under the MSP Act exists in

---

[7] 42 U.S.C. § 1395y(b)(3).

situations where liability is established by a separate adjudication or agreement. In other words, a primary plan's liability may be established by a judgment, *settlement*, or by other means.[8]

30.     If a Medicare beneficiary does not reimburse Medicare as required by 42 C.F.R. § 411.24(h), the primary payer is obligated to do so. *See* 42 C.F.R. § 411.24(i)(1) ("In the case of liability insurance settlements . . . the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare *even though it has already reimbursed the beneficiary or other party.*") (emphasis added).

31.     In addition to MAOs, first-tier and downstream entities also suffer damages, *i.e.* an injury-in-fact, when a primary plan fails to make a payment or reimburse pursuant to the MSP laws.

32.     A first-tier entity is any party that enters into a written arrangement, acceptable to CMS, with an MAO, to provide administrative or health care services for a Medicare eligible individual under the MA program. 42 C.F.R. § 422.2; *see also Medicare Managed Care Manual*, Ch. 11 (Rev. 83, 04-25-07).

33.     A downstream entity is any party that enters into a written arrangement, acceptable to CMS, with persons or entities involved with the MA benefit, below the level of the arrangement between an MAO (or applicant) and a first-tier entity. *See* 42 C.F.R. § 422.2.

---

[8] *See Humana Med. Plan, Inc., v. Western Heritage Ins. Co.*, 832 F. 3d 1229 (11th Cir. 2016); *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (*citing* 42 U.S.C. § 1395y(b)(3); § 1395y(b)(2)(B)(ii)); *accord MSP Recovery, LLC v. Allstate Ins. Co.,* 2016 WL 282030 (11th Cir. 2016). Courts in this District have followed the Eleventh Circuit's decision in *MSP Recovery v. Allstate. See Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 1:12-cv-20123-MGC (S.D. Fla. 2012); *MSP Recovery, LLC v. Allstate Ins. Co.*, 2015 U.S. Dist. LEXIS 130834 (S.D. Fla. 2015); *MSP Recovery, LLC v. Progressive Select Ins. Co.*, 96 F. Supp. 3d 1356 (S.D. Fla. 2015); *MSP Recovery, LLC v. Progressive Select Ins. Co.*, 2015 U.S. Dist. LEXIS 134484 (S.D. Fla. May 18, 2015); and *MSP Recovery, LLC v. Allstate Insurance Company*, 1:15-cv-20788-PAS (S.D. Fla. June 24, 2015).

34.     First-tier and downstream entities administer and provide Medicare services to the Medicare beneficiaries. The first-tier and downstream entities bear the full risk of loss because of their contractual obligations with MAOs.

35.     First-tier and downstream entities include MSOs and IPAs, and other full-risk providers, all of which have standing to bring suit under 42 U.S.C. § 1395y(b)(3)(A). *See Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.,* 758 F.3d 787, 789-90 (6th Cir. 2014) (holding that medical providers who suffer an injury-in-fact have standing to sue primary plans in violation of its MSP obligations under 42 U.S.C. § 1395y(b)(3)(A)).

**D.      The Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA")**

36.     Settling parties are under an obligation to report under Section 111 of the MMSEA. 42 U.S.C. § 1395y(b)(8). This provision requires liability insurers and self-insured plans, including defendants in MDL proceedings, to report to Medicare the details of settlements, judgments, awards or other payments made to Medicare recipients, including Medicare Parts C and D recipients. Congress enacted this provision to curtail widespread cheating that was costing the Medicare program, and MAO plans, hundreds of millions of dollars each year.

37.     If a conditional payment is made, the primary payer must reimburse the secondary payer for that payment. These recovery rights, however, aren't worth much if MAOs are unable to identify primary payers in real time. *Cf. United States v. Baxter Int'l., Inc.,* 345 F. 3d 866 (11th Cir. 2003) (describing why traditional Medicare cannot more fully allege its reimbursement claims in a mass tort settlement, including the fact that all information needed to assert claims is in the exclusive possession of the settling parties). For example, in *Avandia,* the MAO was forced to seek the identities of settling MAO plan members through lawsuits in federal and state court, extensive data mining, and review of all relevant public filings—an

11

extremely expensive, burdensome, and time-consuming process. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012). Section 111 of the MMSEA was passed to end all of that.

<u>**STANDING**</u>

38.     Plaintiffs have entered into binding agreements with certain MAOs, and first-tier entities (collectively, the "assignors"), which have assigned their rights of reimbursement, recovery and subrogation to Plaintiffs. Thus, Plaintiffs own all of the assignors claims for reimbursement and recovery, as well their subrogation rights, including the right to pursue recovery of medical claims or payments, amounts owed on unpaid bills, and expenses paid by assignors on behalf of their enrollees (collectively, the "Enrollees"), from entities liable as primary payers (or entities that received payment from primary payers), including Defendants.

39.     As a representative example, MSP Recovery, LLC, entered into an agreement with Summacare, Inc. ("Summacare"), an MAO, on May 12, 2017, whereby Summacare irrevocably assigned to MSP Recovery, LLC, its right to recover conditional payments made on behalf of its Enrollees:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and all of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

*See* Assignment Agreement, attached as **Exhibit A**. MSP Recovery, LLC, subsequently assigned

its rights to Plaintiffs. *See* **Exhibit B.** This Assignment is a representative example of assignments Plaintiffs have obtained from other MAOs and their assigns.

40.     As a further representative example, J.B., a Summacare Enrollee, suffered severe bodily injuries from adverse effects associated with the intended use of Pradaxa that required medical care and treatment.[9] Summacare was billed for and made conditional payments for J.B.'s care and treatment. Specifically, on November 30, 2011, J.B. received medical treatment for Pradaxa-related injuries. On December 27, 2011, Summacare was billed and issued a payment to cover J.B.'s Pradaxa-related medical expenses. J.B. filed a lawsuit against Boehringer seeking damages for injuries J.B. suffered from using Pradaxa. J.B.'s lawsuit was dismissed in accordance with the Stipulation of Dismissal filed in the MDL Proceedings. This example is representative of the conditional payments that Plaintiffs and Class Members have the right to recover from Defendants.

## BACKGROUND FACTS AND GENERAL ALLEGATIONS

41.     Boehringer designed, manufactured, marketed, distributed, tested, labeled and sold Pradaxa as a blood thinner, to treat and reduce the risks of stroke and blood clots in persons with atrial fibrillation ("AF") not caused by a heart valve problem.

42.     In 2010, Boehringer introduced Pradaxa to the North American market. Later that year, in October 2010, the Food and Drug Administration ("FDA") approved the drug to prevent strokes and blood clots.

---

[9] In accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the name and policy number of any Medicare beneficiary (including J.B.) will be provided only after an appropriate confidentiality order has been entered.

43.     Boehringer marketed Pradaxa as a treatment for AF, stating in their marketing materials that the condition was not "directly" life threatening, but also stating that AF can have serious and deadly consequences for patients.

44.     Boehringer claimed that Pradaxa was a better alternative to traditional blood thinners, such as warfarin (Coumadin), in responding to strokes and blood clots.

45.     Unlike warfarin, Pradaxa was approved with a standard dosage for all patients, to be taken twice daily. Another important difference between Pradaxa and warfarin was Boehringer's claim that Pradaxa did not require individual (and constant) physician monitoring.

46.     Boehringer conducted clinical trials of Pradaxa and claimed that Pradaxa was much safer than warfarin with lower risks of internal bleeding. This claim was contradicted by Pradaxa's effects on patients. The clinical trials also revealed a higher risk of bleeding in older patients.

47.     As a result of increased deaths in patients taking Pradaxa, on December 7, 2011, the FDA opened an investigation into the trial and drug itself.

48.     Moreover, Boehringer set out to conceal their knowledge that Pradaxa caused life threatening bleeding from patients, consumers and the medical community. In fact, the warning labels on Pradaxa packaging failed to warn of the frequency of bleeding revealed by the clinical trials and the irreversible nature of those bleeds.

49.     As a result of Pradaxa's risks and Boehringer's concealment, numerous Enrollees suffered bodily injuries from the adverse effects of the intended use of Pradaxa, which required medical care and treatment.

50.     One of those Enrollees was J.B, who received health insurance benefits from an MA Plan offered by Summacare. J.B. and other Enrollees received medical services, treatment,

14

or supplies for the injuries caused by using Pradaxa. At the time the medical services were rendered, J.B. and those Enrollees were members of MAOs that either subsequently assigned their recovery and reimbursement rights to Plaintiffs, or are Class Members.

51.     Summacare, and the other MAOs that provided Medicare benefits to these Enrollees, are "secondary payers" with regard to the Pradaxa-related medical expenses that J.B. and the other Enrollees incurred as a result of taking Pradaxa and risking its life-threatening bleeding. Plaintiffs, as Summacare's (and other MAOs') assignees, and the Class Members, have a statutory right to reimbursement from any "primary plan" responsible for the Enrollees' medical expenses.

52.     Numerous lawsuits were brought against Boehringer seeking damages resulting from the use of Pradaxa. The cases were transferred and consolidated in the United States District Court for the Southern District of Illinois as an MDL.

53.     On May 28, 2014, the MDL Plaintiffs and Boehringer entered into a settlement agreement (the "Settlement Agreement") where they agreed to settle pending litigation related to Pradaxa use and acknowledging the claims for personal injuries related to Pradaxa.

54.     At the time of settlement, Boehringer knew, had reason to know, or should have known of their statutory duty, as primary payers, to pay for the Enrollees' Pradaxa-related medical expenses, or reimburse Plaintiffs' assignors and Class Members for their conditional payments.

55.     Under the MSP Act, "A primary plan's responsibility for such payment may be demonstrated by a judgment, *a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability)* of payment for items

15

or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B) (emphasis added).

56.     As such, the above-referenced settlement made Boehringer responsible, as a primary payer under the MSP Act, for reimbursing Plaintiffs and Class Members for their conditional payments of the Enrollees' Pradaxa-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(B), quoted above.

57.     On August 13, 2014, Defendant Providio was appointed to take control of and administer the Pradaxa settlement. Lawful administration of that settlement required Providio, among other things, to reimburse the MAOs for their conditional payments of Pradaxa-related medical expenses, including those of Summacare, Plaintiffs, and the Class Members.

58.     On or about June 1, 2016, Plaintiffs notified Defendants' representatives of Plaintiffs' and Class Members' reimbursement rights and demanded that they reimburse from the Settlement Funds the Plaintiffs' conditional payments of Pradaxa-related medical expenses. A copy of the Notice of Lien is attached as **Exhibit C**.

59.     Despite receiving notice of Plaintiffs' and the Class Members' rights to reimbursement, Defendants failed to meet their payment obligations under the MSP Act and argued that all settlement proceeds had been distributed, which is no defense under the MSP Act.

60.     Defendants have not reimbursed Plaintiffs or the Class Members for their conditional payments of the Enrollees' Pradaxa-related medical expenses.

61.     Defendants violated their statutory obligations to ascertain and properly reimburse MAOs that provided Pradaxa-related Medicare benefits to their Enrollees. Defendants' settlement payments and resulting releases do not limit or alter their reimbursement obligations

under the MSP Law (including the MSP Act, other Medicare provisions and federal regulations cited above).

62.     Plaintiffs have the right to recover double damages from Defendants (an amount double the sums otherwise provided), because of Defendants' failure to appropriately reimburse Plaintiffs and Class Members for conditional payments of the Enrollees' Pradaxa-related medical expenses. *See* 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(3)(A).

## CLASS ALLEGATIONS

63.     Plaintiffs bring this suit both individually and, in accordance with Federal Rule of Civil Procedure 23, on behalf of the following Class.

64.     The Class that Plaintiffs seek to represent is defined as follows:

Entities that contracted directly with CMS or their assignees under Medicare Part C, or both, as well as MAOs, first-tier entities, downstream entities, and other similar entities, to provide Medicare benefits through a Medicare Advantage Plan to Medicare beneficiaries for medical services, treatment, drugs, or supplies ("Medicare Services"), as required and regulated by HHS or CMS, or both, as a direct or indirect payer as a result of partial or full risk agreements on behalf of Medicare beneficiaries for parts A, B or D, or all of the parts, all of which pertain to the same medical services that were caused by the Defendants' product, for which the Defendant has conceded and accepted primary obligation by nature of the MDL proceedings' settlement; and

that have made payment(s) for Medicare Services, whereby, the MAO or its assignee, as a secondary payer, has the right and responsibility to obtain reimbursement for such Medicare Services. Defendants are the primary payers as they are primarily responsible as a result of the settlement of the MDL proceedings and have failed to reimburse, including but not limited to, the MAOs or their assignees.

The Class specifically excludes those MAOs or their assigns who entered into a Private Lien Resolution Program with Defendants.

65.     Federal Rule of Civil Procedure 23(a) states that a plaintiff may sue as a representative party on behalf of a class, if it establishes that:

a.   the class is so numerous that joinder of all members is impracticable;

b.   there are questions of law or fact common to the class;

c.   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

d.   the representative party will fairly and adequately protect the interests of the class.

66.   The Class is properly brought and should be maintained as a class action under Rule 23(a), because:

a.   **Numerosity:** Joinder of all members is impracticable. There are more than 600 MAOs and MA Plans (including the organizations that assigned their rights to Plaintiffs) throughout the United States that made secondary payments for their Enrollees' Pradaxa-related medical expenses. Thus, Plaintiffs and the Class satisfy the numerosity requirement.

b.   **Commonality:**  Plaintiffs and the Class Members have claims that raise common questions of law and fact. This is an action where the Plaintiffs and individual Class Members have claims that are based on the same theory of recovery (that is, that they are entitled to reimbursement from Defendants for payments made on behalf of their Enrollees). Each Class Member, including Plaintiffs, possess the same rights to recover its payments under the MSP Law. *See* 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(2), 1395y(b)(3)(A); 42 C.F.R. §§ 422.108(f), 489.20(f)-(h), 411.24(h). Plaintiffs' claim arises from the same practice or course of conduct that gave rise to the Class Members' claims. Plaintiffs and the Class

18

Members: (1) made secondary payments on behalf of its Enrollees for Pradaxa related medical treatment; (2) Defendants became primary payers by virtue of a settlement; (3) Defendants distributed payment from settlement funds to individuals without verifying and satisfying any existing Medicare or MAO liens; and (4) Class Members and Plaintiffs were not reimbursed by the Defendants.

c.     **Typicality:**  Plaintiffs' claims are typical for the Class, because Plaintiffs and the Class Members have the right to the same relief arising from the same course of conduct, *i.e.*, Defendants' failure to reimburse Class Members (or their assignees) for secondary payments of Enrollees' Pradaxa–related medical expenses. Plaintiffs and Class Members have the same right to recover those reimbursements from Defendants, which Defendants should have paid when they made individual settlement payments. Thus, Plaintiffs and the Class Members have sustained damages in the same manner, from the same wrongful conduct by the same Defendants, whose defenses to the claims of Plaintiffs and Class Members will be materially the same. In pursuing their individual claims, Plaintiffs will advance the Class' interests as well.

d.     **Adequacy:**  Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs are members of the Class defined above. Plaintiffs are committed to the active and vigorous prosecution of this action, and have retained competent counsel experienced in class-action litigation. There is no hostility of

interests between Plaintiffs and the other members of the Class. Plaintiffs anticipate no difficulty in managing this litigation as a class action. Plaintiffs have no claims that are antagonistic to the claims of the Class Members that Plaintiffs seek to represent.

67.     In addition to satisfying Rule 23(a), Plaintiffs also satisfy the requirements of Fed. R. Civ. P. 23(b)(3). Questions of law or fact common to the Plaintiffs' and Class Members' claims predominate over any questions of law or fact affecting only individual Class Members. This is so because all claims by Plaintiffs and Class Members are based on Defendants' violation of the Settlement Agreement and the MSP Act. In determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class, as it is in this case, common questions will be held to predominate over individual questions.

68.     Further, the common questions in this case are susceptible to generalized, class-wide proof using Plaintiffs' software system (the "System"). Plaintiffs implemented a methodology to capture, compile, and synthesize large amounts of data in order to identify claims class-wide. This System captures data from different sources to identify instances where MAOs or their assigns are entitled to reimbursement.

69.     A class action is superior to individual actions, in part, because of the following, non-exhaustive list of factors:

a.     Individual joinder of all Class Members would impose extreme hardship and inconvenience on them, because they do business all over the nation;

b.     Individual claims by Class Members are impractical because the cost of pursuing an individual claim could exceed its value. As a result, individual

Class Members have no interest in prosecuting and controlling separate actions;

c.      There are no known Class Members who are interested in individually controlling the prosecution of separate actions;

d.      The interests of justice will be served by resolving the common disputes of all Class Members in one forum;

e.      Judicial and party resources will be conserved by resolving the common disputes of all Class Members in one forum;

f.      Individual claims would not be cost effective or economically feasible to pursue through individual actions; and

g.      The action is manageable as a class action.

<u>**COUNT I**</u>
<u>**BOEHRINGER INGELHEIM PHARMACEUTICALS INC.**</u>
**Private Cause of Action for Double Damages**
**(Under 42 U.S.C. § 1395y(b)(3)(A))**

70.     Plaintiffs and Class Members incorporate by reference paragraphs 1-69 of this Complaint.

71.     Plaintiffs' assignors and Class Members made conditional payments as Medicare providers in accordance with their contracts with CMS for items and services provided to their Enrollees as a result of taking Pradaxa.

72.     Boehringer designed, manufactured, and sold Pradaxa.

73.     The United States Congress "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan that fails to provide for primary payment, or appropriate reimbursement" in accordance with the MSP Act. 42 U.S.C. § 1395y(b)(3)(A).

74.     The Defendant entered into the Settlement Agreement in which it agreed to settle pending litigation related to Pradaxa use and acknowledged the claims for personal injuries related to Pradaxa.

75.     Boehringer's responsibility to pay for Enrollees' medical expenses is demonstrated by "a separate adjudication or agreement" (that is, a settlement agreement), when it entered into the Settlement Agreement with Enrollees. As interpreted by the Eleventh Circuit, this satisfies any condition precedent to bringing this cause of action under the MSP Act.[10]

76.     Boehringer negotiated the Settlement Agreement with Enrollees relating to their injuries sustained as a result of Pradaxa and obtained a release of liability for itself, in total disregard of any Medicare benefits conditionally paid on an Enrollees' behalf. Boehringer failed to follow its obligations to make the reimbursements.

77.     By virtue of the Settlement Agreement, Boehringer became the primary payer and the primary plan under the MSP Act. 42 U.S.C. § 1395y(b)(2)(A). As such, Boehringer was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiffs' assignors and Class Members on behalf of Enrollees.

78.     Boehringer must reimburse Medicare even if it already paid Enrollees. *See* 42 C.F.R. § 411.24(i)(1).

79.     Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiffs are entitled to recover double the amount from Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services, treatment, or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services,

---

[10] *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006); *Humana v. Western Heritage*, 832 F.3d 1229 (11th Cir. 2016).

treatment or supplies advanced on behalf of Enrollees by Plaintiffs' assignors and Class Members.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Boehringer Ingelheim Pharmaceuticals, Inc., for double damages under 42 U.S.C. § 1395y(b)(3)(A), court costs, interests, and any other relief this Court deems just and proper.

**COUNT II**
**PROVIDIO LIEN COUNSEL, LLC**
**PROVIDIO MEDISOLUTIONS, LLC**
**Private Cause of Action for Double Damages**
**(Under 42 U.S.C. § 1395y(b)(3)(A))**

80.    Plaintiffs and Class Members incorporate by reference paragraphs 1-69 of this Complaint.

81.    Plaintiffs' assignors and Class Members made conditional payments as Medicare providers in accordance with its contracts with CMS for items and services provided to their Enrollees as a result of taking Pradaxa.

82.    The United States Congress established a private cause of action against a primary plan that fails to provide for primary payment, or appropriate reimbursement. That private cause of action also extends to entities that receive payment from a primary plan. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii); 42 C.F.R. § 411.24(g).

83.    Boehringer entered into the Settlement Agreement in which it agreed to settle pending litigation related to Pradaxa use and acknowledged the claims for personal injuries related to Pradaxa.

84.    By the terms of the Settlement Agreement, Providio was to receive and take control of the settlement funds and act as the settlement administrator charged with the responsibility for disbursing the funds to claimants, as well as to reimburse conditional payments

made by Plaintiffs' assignors and the Class Members on behalf of Enrollees. Accordingly, Providio is an entity that received payment from a primary payer, such that its failure to reimburse conditional payments subjects it to liability under the MSP Act.

85.     As an entity that received payment from a primary payer, Providio was required to reimburse Plaintiffs' assignors and Class Members but failed and refused to do so. That failure gives rise to a private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), for Plaintiffs and Class Members to recover double the amount from the Providio Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services, treatment or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services, treatment or supplies advanced on behalf of Enrollees by Plaintiffs' assignors and Class Members.

**WHEREFORE**, Plaintiffs demand judgment against the Providio Defendants for double damages under 42 U.S.C. § 1395y(b)(3)(A), court costs, interests, and any other relief this Court deems just and proper.

**COUNT III**
**PROVIDIO LIEN COUNSEL, LLC**
**PROVIDIO MEDISOLUTIONS, LLC**
**Breach of Fiduciary Duty**

86.     Plaintiffs and Class Members incorporate by reference paragraphs 1-69 of this Complaint.

87.     Plaintiffs' assignors and Class Members made secondary payments pursuant to Medicare, for items and services provided to Enrollees as a result of being prescribed and taking the Pradaxa-related medical expenses under their contracts with CMS.

88.     Boehringer entered into the Settlement Agreement in which they agreed to settle the MDL Proceedings arising from Pradaxa use, and acknowledged individual Enrollees' claims

for personal injuries arising from Pradaxa use. As part of that agreement, Boehringer agreed to pay $650 million to resolve Pradaxa claims.

89.     The Settlement Agreement triggered Boehringer's duty to reimburse conditional payments of the Pradaxa-related medical expenses that were made by Plaintiffs' assignors and Class Members. Thus, Boehringer is a primary payer and primary plan under the MSP Act, 42 U.S.C. § 1395y(b)(2)(A). They, therefore, were (and are) required by law to reimburse Plaintiffs' assignors and the Class Members for the Pradaxa-related medical expenses.

90.     Providio was hired and appointed by the MDL court to identify and resolve any claims for reimbursement, including the claims of Plaintiffs' assignors and Class Members. In fact, through MDL Order No. 81, Providio was expressly charged with the responsibility to establish and administer a "single global resolution model" that would identify and resolve all outstanding conditional payments that Plaintiffs' assignors and the Class Members made on behalf of Enrollees. *See* MDL Order No. 81 (requiring Providio to "identify and resolve the Medicare reimbursement claims related to federal Medicare A and B, as contemplated by the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), related to all claimants who may receive settlement from any and all defendants arising from this litigation").

91.     The Court also set up a Qualified Settlement Fund and appointed Providio as administrator of that fund, for the purpose of resolving claims, including the claims that its inaction forced Plaintiffs and the Class Members to allege in this action. *See* MDL Order No. 82.

92.     Providio was appointed and accepted the responsibility to administer the Settlement Fund, including setting up and administering a single global resolution model for the resolution of "reimbursement claims related to federal Medicare A and B," which include Plaintiffs' and Class Members' reimbursement claims. *See* MDL Order 81. Accordingly,

25

Providio owed an express and implied fiduciary duty to all those who were beneficiaries of the settlement fund, including Plaintiffs' assignors and Class Members, to resolve their claims for reimbursement of conditional payments of Pradaxa-related medical expenses.

93.     If Providio had discharged its responsibilities, it would have identified the conditional payments for Pradaxa-related medical expenses that Plaintiffs' assignors and Class Members made, for which reimbursement was required under the MSP Act. However, Providio made no such effort, thereby breaching its fiduciary duty to Plaintiffs' assignors and Class Members by failing to identify, let alone resolving, their reimbursement claims.

94.     As a result of Providio's breach of its fiduciary duties, Plaintiffs' assignors and the Class Members have suffered damages.

**WHEREFORE**, Plaintiffs and the Class Members demand judgment against Providio for damages, reasonable attorney's fees, court costs, interests, and any other relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, request that the Court grant the following relief:

a.     find that this action satisfies the prerequisites for maintenance of a class action under the Federal Rules of Civil Procedure and certify the Class;

b.     designate Plaintiffs as representatives for the Class and Plaintiffs' undersigned counsel as Class Counsel; and

c.     issue a judgment against Defendants that:1691

d.      grants Plaintiffs and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

e.      grants Plaintiffs and the Class alleged here equitable relief by issuing an injunction ordering Defendants to comply with their statutory duties, to prevent Plaintiffs and the Class Members from suffering irreparable future harm;

f.      grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

g.      grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated: February 27, 2018.

Respectfully submitted,

**RIVERO MESTRE LLP**
*Lead Counsel for Plaintiffs and the Class*
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone:  (305) 445-2500
Facsimile:  (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: cwhorton@riveromestre.com
E-mail: knwamah@riveromestre.com
Secondary: npuentes@riveromestre.com

By:     /s/ Andrés Rivero
        ANDRES RIVERO
        Florida Bar No. 613819
        ALAN H. ROLNICK
        Florida Bar No. 715085

CHARLES E. WHORTON
Florida Bar No. 46894
KINGSLEY C. NWAMAH
Florida Bar No. 118364
DAVID L. DAPONTE
Florida Bar No. 1002724

**MSP Recovery Law Firm**
*Co-Counsel for Plaintiffs*
5000 S.W. 75th Avenue, Suite 400
Miami, Florida 33155
Telephone:  (305) 614-2239
Frank C. Quesada, Esq., Fla. Bar No. 29411
John H. Ruiz, Esq., Fla. Bar No. 928150
E-mail: serve@msprecovery.com
E-mail: fquesada@msprecovery.com
E-mail: jruiz@msprecovery.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this the February 27, 2018, the foregoing was
electronically filed with the Clerk of the Court using the CM/ECF filing system.  We also certify
that the forgoing document is being served this date on all counsel of record or pro se parties on
the attached Service List in the manner specified, either via transmission of Noticed of Electronic
Filing generated by the CM/ECF system or in some other authorized manner for those counsel or
parties who are not authorized to received electronically Notices of Electronic Filing.

/s/ Andres Rivero___
Andres Rivero